UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PATRICIA C. LUCA,

                Plaintiff,

-against-

THE COUNTY OF NASSAU and NASSAU COUNTY POLICE DEPARTMENT, NASSAU COUNTY CIVIL SERVICE COMMISSION, KARL KAMPE in his Individual and official capacity and POLICE OFFICER CRESSWELL in her individual and official capacity, and CAPTAIN MCGOVERN in his individual and official capacity,

                Defendants.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-04-4898 (FB) (AKT)

*Appearances*
*For the Plaintiff:*
FREDERICK K. BREWINGTON, ESQ.
Law Offices of Frederick K. Brewington
50 Clinton Street, Suite 501
Hempstead, NY 11550

*For the Defendants:*
LORNA B. GOODMAN, ESQ.
Nassau County Attorney
By: BETHANY BRESNAIDER O'NEILL, ESQ.
Deputy County Attorney
One West Street
Mineola, NY 11501

**BLOCK, Senior District Judge:**

        Plaintiff Patricia C. Luca ("Luca") sues the County of Nassau ("the County"), Nassau County Police Department ("NCPD"), Nassau County Civil Service Commission ("NCCSC"), Karl Kampe ("Kampe"), Police Officer Eileen Cresswell ("Cresswell"), and Captain Allen McGovern ("McGovern") for violations of Title VII of the Civil Rights Act of

1

1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); 42 U.S.C. § 1983 ("§ 1983"); New York State Human Rights Law, N.Y. Exec. Law § 296 ("HRL"); and New York state common law. Defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Luca subsequently withdrew her claims against NCPD. For the reasons stated in open court on May 4, 2007, and summarized below, the motion is granted in part and denied in part.

## I. Breach of Contract

As discussed below, *see infra* Part III.A, Luca's Title VII retaliation claim survives defendants' motion for summary judgment; accordingly, the Court has supplemental jurisdiction over Luca's state law breach of contract claim. *See* 28 U.S.C. § 1367. That claim is based on defendants' alleged violation of a settlement agreement, executed in April 2003, that resolved Luca's prior suit against defendants for sexual harassment, discrimination and retaliation. Since the April 2003 settlement agreement refers only to defendants' alleged pre-settlement acts and contains no guarantee of a future position with NCPD, *see* Decl. of Bethany O'Neill ("O'Neill Decl."), Ex. D (Settlement Agreement and Release), defendants' post-settlement decision to non-select Luca was not a "breach" of that agreement; accordingly, her claims are not cognizable under contract law. *See Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 420 (E.D.N.Y. 2006) ("Although it is unlawful for an employer to terminate an employee for discriminatory reasons, . . . [a] remedy for such a violation must be pursued under legal theories other than ordinary contract principles, such as Title VII."). Even if Luca's claim could arguably be perceived to allege a breach of the covenant of good faith and fair dealing, it is well-settled under New York law that such

a claim cannot be asserted in the absence of a breach of contract. *See Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983) (holding that implied covenant is simply "in aid and furtherance of other terms of the agreement of the parties"); *Lakeville Pace Mech., Inc. v. Elmar Realty Corp.*, 714 N.Y.S.2d 338, 342 (2d Dep't 2000) ("[T]here can be no covenant of good faith and fair dealing implied where there is no contract.").

## II. Sex Discrimination in Hiring

Sex discrimination claims are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972). *See Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (Title VII); *Demoret v. Zegarelli*, 451 F.3d 140, 151 (2d Cir. 2006) (§ 1983); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) (HRL).

Luca fails to establish a prima facie case of sex discrimination, specifically, that she was non-selected "under circumstances giving rise to an inference of discriminatory intent." *Terry*, 336 at 138. On the contrary, she does not dispute that two out of five female applicants were hired by NCPD from her same group of candidates, *see* O'Neill Decl., Ex. B (Aff. of Allen McGovern) ¶ 20, and has admitted in her own deposition statements that she was not discriminated against based on her sex, *see* Pelle-Beer Decl., Ex. I (Luca Dep.) at 229 (stating she did not believe she was discriminated against by the County or NCPD "because they hired at least one of the other females that [she] had known"); she cannot now defeat summary judgment by asserting the contrary. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's

3

affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.").

These same undisputed facts – that NCPD hired other women from the same list of candidates – undermine Luca's claim that the decision to non-select her was made pursuant to some County policy or custom to discriminate on the basis of sex; since Luca offers no evidence to the contrary, there is no basis for municipal liability under § 1983. *See Monell v. New York City Department of Social Servs.*, 436 U.S. 658, 694 (1983).

### III. Retaliation

#### A. Title VII and HRL

Retaliation claims are cognizable under Title VII and HRL, and are analyzed under the same burden-shifting framework of *McDonnell Douglas*. *See Summer v. United States Postal Service*, 899 F.2d 203, 208 (2d Cir. 1990) (Title VII); *Farias*, 259 F.3d at 98 (HRL).

#### 1. County

Luca has established all three elements of a prima facie case of retaliation against the County. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 130 (2d Cir. 1996) (defining elements).

First, she has shown that she participated in a course of protected activity known to defendants (1) beginning in November 2001, when she served the County with a Notice of Claim regarding sexual harassment she suffered as a County corrections officer; (2) continuing in January 2002, when she filed suit against the County for sexual harassment, discrimination, and retaliation by Cresswell and McGovern in the handling of her

background investigation; and (3) culminating in April 2003, when the County agreed to pay her approximately $100,000 to settle that suit. The County's knowledge, easily inferred from its status as a party to the prior suit, is also supported by (1) Luca's allegation that Cresswell asked her about her claim in January 2001, Pl.'s Decl. in Opp'n ¶¶ 6-7, and (2) the memorandum written by Sergeant Robert Spaterella ("Spaterella") to the NCPD Commissioner, stating his belief – albeit mistaken in light of the settlement – that Luca's suit against the County was still pending as of November 18, 2003, O'Neill Decl., Ex. W (Mem. of Robert Spaterella).

Second, Luca alleges that she suffered an adverse employment action when she was non-selected for the position of police officer in December 2003. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Since this occurred approximately eight months *after* the April 2003 settlement, her claim is not barred by the doctrine of *res judicata*. *Cf. Boguslavsky v. South Richmond Sec., Inc.*, 225 F.3d 127, 130 (2d Cir. 2000) (affirming dismissal of claims that were "identical" to claims "discontinued with prejudice pursuant to the parties' settlement agreement" in prior case). Nor is it barred by Title VII's statute of limitations since she timely filed a retaliation charge with the Equal Employment Opportunity Commission ("EEOC") on February 26, 2004, only two months after her non-selection. *See* 42 U.S.C. § 2000e-5(e)(1).

Third, although the eight-month gap between the April 2003 settlement and December 2003 non-selection may be insufficient, standing alone, to create an inference of retaliation, *see Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (affirming

dismissal for lack of evidence establishing causal nexus between plaintiff's complaint and defendant's refusal to hire four months later), Luca offers other evidence of retaliatory animus (1) in the handling of her background investigation by Cresswell and McGovern, such as Cresswell's repeated questions to Luca about the status of her discrimination claim and McGovern's multiple suggestions that she voluntarily withdraw her application, and (2) most notably, in Spaterella's statement to the NCPD Commissioner that "[a]nother consideration in the matter of Non-Selecting applicant is the fact that she is presently suing the Nassau County Sheriff's Department and the Nassau County Police Department." O'Neill Decl., Ex. W. Since "relevant background evidence, such as statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be considered to assess liability on the timely alleged act," *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176-77 (2d Cir. 2005), Luca has met her burden in establishing the necessary causal connection.

The County's non-retaliatory reasons for non-selecting Luca – that the background investigation of her finances, as well as the manner in which she behaved during the investigation, raised concerns among NCPD officers – are based entirely on the statements of Cresswell and McGovern, the two NCPD officers alleged to have committed the most egregious acts of retaliation prior to Luca's non-selection. Moreover, it appears that NCCSC gave little weight to Cresswell's opinion since it reviewed her negative report and nonetheless approved Luca as a qualified candidate. *See* Pelle-Beer Decl., Ex. R. (Resolution). Finally, that Spaterella notified the NCPD Commissioner about Luca's lawsuit one month prior to her non-selection supports the inference that the decision was retaliatory.

6

Taking all these factors into consideration, and "drawing all justifiable inferences" in Luca's favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), genuine issues of material fact exist as to whether defendants' proffered reasons for non-selecting Luca were pretextual.

## 2. NCCSC

Luca argues that the retaliation claim against NCCSC "must not be dismissed as the NCCSC shares an agency relationship with the Applicant Investigation Unit of [NCPD]," which "performs the background investigations of the applicants . . . on behalf of the NCCSC[,] . . . is comprised of police officers [like Cresswell and McGovern] and is housed within [NCPD]." Pl.'s Mem. of Law in Opp'n at 14. Although defendants do not dispute these facts, the "agency relationship" described by Luca has no bearing on her retaliation claim against NCCSC: She admits that NCCSC approved her for the position of police officer despite Cresswell's negative review; Moreover, she fails to allege that NCCSC took *any* negative action against her; Accordingly, the alleged retaliatory act (i.e., non-selection) cannot be attributed to NCCSC.

## 3. Individual Defendants

Although "individuals are not subject to liability under Title VII," *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000), they may be liable under the HRL if they were personally involved in the conduct giving rise to the claim. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995).

With respect to Kampe: Luca alleges that "[he] knew that [she] was being treated differently by [Cresswell] and [McGovern], and took no affirmative steps to end their

7

discriminatory behavior," and that "[he] condoned [their] actions toward [her] and allowed them to continue until the Commissioners [of NCCSC] themselves took action once they were placed on notice by [her]." Pl.'s Mem. of Law in Opp'n at 14. Even accepting these allegations as true – that Kampe somehow condoned the discriminatory actions of Cresswell and McGovern – they do not establish that Kampe was personally involved in Luca's non-selection; furthermore, Kampe cannot be held liable for his acts as executive director of NCCSC since, as discussed above, that entity did not take any negative action against her, but rather approved her as a qualified candidate.

With respect to the other individual defendants: Even assuming that Cresswell continued to interfere with Luca's background investigation after it was reassigned to another officer in January 2003, *see* Pl.'s Decl. in Opp'n ¶ 25, and McGovern convinced the Garden City Police Commissioner not to hire her for a different position, *see id.* ¶ 38, those facts are insufficient to establish that either defendant was personally involved in the decision to non-select her.

## B. Section 1983

Luca invokes procedural and substantive challenges to her non-selection under § 1983.

### 1. Procedural Challenge

At oral argument, plaintiff's counsel cited *McMenemy v. City of Rochester*, 241 F.3d 279 (2d Cir. 2001), for the proposition that Luca's non-selection constituted a deprivation of her Fourteenth Amendment procedural due process rights in violation § 1983.

*McMenemy* undermines, rather than supports, Luca's claim: Affirming the district court's dismissal of the plaintiff's § 1983 claim, the circuit court held that in order to prevail on a procedural due process claim, the plaintiff must show that he "possessed a protected liberty or property interest, and that he was deprived of that interest without due process... Such property interests are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." 241 F.3d at 286 (internal quotation marks and citations omitted). Luca does not allege what due process, if any, she was entitled to receive before being non-selected for the position of police officer. Moreover, she fails to allege that her non-selection deprived her of any recognized property interest. Under New York law, a civil servant "does not possess any mandated right to appointment or any other legally protectible interest[,] [but] can assert at most the right to consideration for and a 'hope' of appointment." *Cassidy v. Municipal Civil Serv. Comm'n*, 37 N.Y.2d 526, 529 (1975).

**2. Substantive Challenges**

Luca also claims that she was non-selected in violation of the Fourteenth Amendment's equal protection clause. *See* Pl.'s Mem. of Law in Opp'n at 19-20. The Second Circuit has refused to recognize such claims under § 1983 where, as here, the plaintiff alleges that defendants retaliated against her for complaining of discrimination; the circuit court has acknowledged, however, that retaliation claims may be cognizable under the First Amendment. *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("Although claims of retaliation are commonly brought under the First Amendment . . . we know of no court

9

that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination. . . . [W]e see no reason to break new constitutional ground in this case." (citations omitted)).

If Luca were to present a cognizable First Amendment retaliation claim, the County could be subject to liability since the non-selection decision was made by the NCPD Commissioner, and "municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). For the reasons stated above, *see supra* Part III.A, liability would not attach to NCCSC or the individual defendants since "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation and quotation omitted).

In any event, however, since Luca's complaint to the County did not constitute protected speech under the First Amendment. As the Supreme Court has held:

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick v. Myers*, 461 U.S. 138, 147 (1983). Applying this standard, the Second Circuit has held that when an employee's complaints to her supervisor "implicate[ ] system-wide

10

discrimination they ... unquestionably involve[ ] a matter of 'public concern,'" *Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir. 1993) (citation omitted); but when the employee's "complaints [are] personal in nature and generally related to her own situation," they are not matters of public concern, *Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991). Luca's complaint to the County alleges only discrimination and sexual harassment directed towards her, *see* O'Neill Decl., Ex. C (Compl. dated Jan. 7, 2002); in that respect, the facts are similar to those in *Saulpaugh*, where the circuit court affirmed the district court's dismissal on the grounds that "there [was] no indication ... that [plaintiff's] suit sought relief against pervasive or systemic misconduct by a public agency or public officials, or that her suit was part of an overall effort ... to correct allegedly unlawful practices or bring them to public attention." 4 F.3d at 143 (internal quotation marks and citation omitted). Accordingly, Luca's complaint cannot form the basis of a First Amendment retaliation claim.

### IV. Punitive Damages

Going forward, Luca will be precluded from seeking punitive damages since they are (1) disallowed under Title VII as against "a government, government agency, or political subdivision," 42 U.S.C. § 1981a(b)(1); and (2) only allowed under the HRL in cases of housing discrimination, *see* N.Y. Exec. Law § 297(9).

### CONCLUSION

The Court grants defendants' motion in part and dismisses all of Luca's claims except for those brought for retaliation against the County under Title VII and the HRL;

at trial, Luca will be precluded from seeking punitive damages.

**SO ORDERED.**

/SIGNED/
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 8, 2007