UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

PATRICIA LUCA,

                Plaintiff,

    -against-

THE COUNTY OF NASSAU,

                Defendant.

------------------------------------------------------------x

**MEMORANDUM AND ORDER**

Case No. 04-CV-4898 (FB)

*Appearances:*
*For the Plaintiff:*
FREDERICK K. BREWINGTON, ESQ.
The Law Offices of Frederick K. Brewington
50 Clinton Street, Suite 501
Hempstead, New York 11550

*Of Counsel*:
SCOTT A. KORENBAUM, ESQ.
JILL R. SHELLOW, ESQ.

*For the Defendant*:
LORNA B. GOODMAN, ESQ.
Nassau County Attorney
BY:   RALPH J. REISSMAN, ESQ.
        Deputy County Attorney
One West Street
Mineola, New York 11501

**BLOCK, Senior District Judge:**

       This case comes to the Court for reconsideration of the hourly rate the Court utilized in calculating an award of attorney's fees for plaintiff's attorney, Frederick Brewington ("Brewington"), in light of the Second Circuit's recent decision in *Simmons v. New York City Transit Authority*. 575 F.3d 170 (2d Cir. 2009); *see also Luca v. County of Nassau*, No. 08-3384-CV, 2009 WL 2524022, at *4 (2d Cir. Aug. 19, 2009) (hereafter "*Luca* Remand"). Plaintiff now also seeks attorney's fees and costs incurred opposing the defendant's appeal.

**I**

       In the district court, Brewington successfully represented the plaintiff ("Luca") in her Title VII litigation against the defendant ("the County") for failing to hire her as a police officer. The jury awarded her $150,000 in compensatory damages. The Court awarded her an additional $604,589 for future lost wages and pension benefits; the parties had agreed that the Court would

compute plaintiff's front pay award in the event of a verdict in her favor.  The Court also awarded costs in the amount of $15,662.36.  *Luca v. County of Nassau*, No. 04-CV-4898, 2008 WL 2435569, at *11 (E.D.N.Y. June 16, 2008) (hereafter "*Luca* Dist. Ct. Op.").   The Second Circuit succinctly affirmed these awards by Summary Order.  *Luca* Remand at *4.

The Court also awarded attorney's fees of $179,722.50 ("the fee award").  *Luca* Dist. Ct. Op. at *11.  In arriving at this sum, the Court referenced the hourly rates charged by attorneys in both the Eastern District of New York, where the case was tried and where Brewington's law office was located, as well as the Southern District of New York.  *Id.*

The Second Circuit remanded for reconsideration of the fee award in light of *Simmons*.  In that case, the Second Circuit held that "when faced with a request for an award of higher out-of-district-rates" charged by attorneys, "a district court must first apply a presumption in favor of" applying the prevailing rates of its district; "[i]n order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons,* 575 F.3d at 175.  As the circuit court explained in its remand order:

> As we recently explained in  [*Simmons*], however, an examination of out-of-district rates is proper only in a narrow set of circumstances. Because the fees in this case were awarded prior to *Simmons*, the record is insufficient to determine whether those circumstances obtain here.  Accordingly, the district court's award of attorneys' fees is vacated and remanded for further analysis in light of our decision in *Simmons*.

*Luca* Remand at *4.

In utilizing both Eastern and Southern District rates, the Court noted, as had other Eastern District judges, that the border between the two district courts "is uniquely permeable," *Luca* Dist. Ct. Op. at *9, linked together by numerous bridges, tunnels and highways; indeed, the two district courthouses are each juxtaposed to the Brooklyn Bridge, within an easy stroll from each

other.  Consequently, "[a] strict application of the forum rule would ignore this geographic reality," *id.* (citation omitted),  as well as its economic consequences; it would create an unreasonable disincentive for Manhattan-based attorneys to bring suits in Brooklyn, as well as "an incentive for lawyers based in the Eastern District not to take cases in their own backyard because higher rates for the same work lie just across the East River."  *Id.*

In implicitly rejecting this logic, and placing highly restrictive limitations on a district court from exercising its sound discretion in a given case, *Simmons* abjured the use of Southern District rates for Eastern District litigations because the plaintiff had not shown "that they were likely to produce a substantially better result than competent counsel in the Eastern District would produce for less . . . money," reasoning that the defendant "should not be required to pay for a limousine when a sedan could have done the job."  *Simmons,* 575 F.3d at 177.  In conjuring this metaphor, the circuit court presumably did not intend to suggest that there was a qualitative difference in the competency of counsel between the two districts, yet it regrettably may be perceived by lawyers whose offices are in the Eastern District as having a condescending tone.  To be sure, the Court has throughout the years presided over trials with Eastern District lawyers—such as Brewington—who deserved to drive in limousines, and has had trials with some Southern District lawyers who should have been driving clunkers.  The Court presumes that the *Simmons* court would agree that the differences in rates between the two districts, rather than being qualitatively based, are more likely driven by the differences in office rents and the costs of running a law practice.  *See also Gutman v. Klein*, No. 03-CV-1570, 2009 WL 3296072, at *2 n.1 (Cogan, J.) (E.D.N.Y. Oct. 13, 2009) (criticizing *Simmons* for ignoring "the practical reality of practicing law in New York [City]," and concluding, "[i]t may be that the concept of a geographically-based as opposed to case complexity-based lodestar will someday have as much relevance to the selection of an attorney as

3

dinosaurs have to birds."); Mark Fass, *Judge Follows Circuit in Fee Award But Expresses Dissatisfaction With 'Geographic Lodestar' Model*, N.Y.L.J., Oct. 22, 2009, at 1.

## II

### A.  Brewington's Eastern District Hourly Rate for Trial Services

On remand, Brewington does not seek to rebut the *Simmons* presumption in favor of the Eastern District's prevailing hourly rates; he contends simply that the hourly rate of $400 previously selected by the Court is a reasonable rate within the Eastern District, even though the Court had bolstered its analysis by also citing to Southern District rates.  *See* Brewington Decl. ¶¶ 4-20.  The County proposes a rate of $325 per hour, which it says is the "prevailing rate for partners."  Reissman Decl. ¶ 5.

The Court adheres to its findings of fact with respect to Brewington's experience and the quality of the services he provided in this case:

> Brewington has over 25 years' experience as a lawyer.  In 1987, he started his own firm, specializing in plaintiffs-side civil rights cases; according to docket searches, he has handled roughly 180 such cases in the Eastern District of New York and another 20 in the Southern District.  His peers recognize him as an authority in his specialty, as evidenced by his numerous teaching and speaking engagements.
>
> *    *    *
>
> The caliber of Brewington's performance against a tenacious adversary was outstanding and resulted in an extremely favorable result for his client.

*Luca* Dist. Ct. Op. at *9-*10.

Brewington's proposed rate of $400 per hour exceeds the fee awards he has received in prior Eastern District litigations.  *See Cruz v. Henry Modell & Co.*, No. 05-CV-1450, 2008 WL 905351 (Tomlinson, M.J.) (E.D.N.Y. Mar. 31, 2008) (awarding Brewington $325 per hour); *Duke v. County of Nassau*, No. 97-CV-1495, 2003 WL 23315463 (Seybert, J.) (E.D.N.Y. Apr. 14, 2003)

($300 per hour); *Werring v. SUNY Farmingdale*, No. 98-CV-5248, Docket Entry No. 43 (Boyle, M.J.) (E.D.N.Y. Oct. 4, 2000) ($300 per hour).

Nonetheless, numerous recent cases in the Eastern District convince the Court that a reasonable paying client would gladly pay $400 per hour for an attorney of Brewington's caliber. *See Gutman*, 2009 WL 3296072, at *2 (hourly rates of between $300 and $400 for partners found to be "within the Eastern District range"); *Rodriguez v. Pressler & Pressler, LLP*, No. 06-CV-5103, 2009 WL 689056 (Cogan, J.) (E.D.N.Y. Mar. 16, 2009) (awarding $450 per hour to civil rights attorney with 17 years of experience in FDCPA case); *Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 208 (E.D.N.Y. 2006) (James Orenstein, M.J.) (awarding $350 per hour to partners in ADA employment discrimination case), *aff'd*, 531 F.3d 127 (2d Cir. 2008); *see also Morgenstern v. County of Nassau*, No. 04-CV-58, 2009 WL 5103158, at *16-18 (Lindsay, M.J.) (E.D.N.Y. Dec. 15, 2009) (awarding $400 per hour in a § 1983 case, relying on Judge Cogan's analysis in *Gutman*).[1] The $400 which Brewington seeks is compatible with these awards.

Brewington bolsters his fee request with numerous affidavits from other experienced civil rights attorneys who practice in the Eastern District; each attests to the reasonableness of Brewington's requested rate. Among these affidavits is that of Douglas Wigdor, an attorney with 14 years of litigation experience in labor and employment law; he received an award of $350 per hour in *Brady*. 455 F. Supp. 2d at 216; Wigdor Decl. (Brewington Supplemental Application, Ex.

---

[1] Luca's 2008 verdict was rendered before some of these fee awards; nonetheless, post-2008 awards are relevant because "current rather than historic hourly rates" are applicable. *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (internal marks and citation omitted). Current rates provide appropriate compensation because "compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed[.]" *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989). The pendency of the County's appeal has delayed Brewington's compensation further, making it even more appropriate to examine current hourly rates and not only rates prevalent when Brewington's fee award was first rendered.

C).[2]  Brewington also submits an affidavit from Matthew Brinckerhoff, an attorney with 20 years of experience in federal civil rights litigation who received $450 per hour in *Rodriguez*.  2009 WL 689056, at *1.  Brinckerhoff also attests that his current hourly rate is $525 and that, by contrast, Brewington's request for $400 per hour is "eminently reasonable . . . [if not] considerably lower than the prevailing rates for attorneys of similar skill and experience."  Brinckerhoff Decl. at ¶ 6 (Brewington Supplemental Application, Ex. E).

The County points only to *Cruz*, where Brewington received $325 per hour.  *Cruz*, 2008 WL 905351, at *10.  Simply because Brewington received $325 per hour in one case in 2008 does not mean that the Court is precluded from awarding $400 in 2010, especially in light of the recent Eastern District cases that have awarded experienced civil rights attorneys more than $325.

Accordingly, the Court concludes that $400 per hour is a reasonable rate for Brewington's services based solely on Eastern District rates.  Since Brewington's hourly rate is the only component of the trial fee award at issue on remand, the Court therefore adheres to its original award of $179,722.50 in attorney's fees.

## B. Appellate Fees and Costs

Luca submits a supplemental application for legal fees and costs incurred during the County's appeal.  Since she successfully defended her verdict, she is entitled to such an award.  *See* 42 U.S.C. § 2000e-5(k) (entitling a "prevailing party" to "reasonable attorney's fee" for proceedings under Title VII, including appeals); *see also Dague v. City of Burlington*, 976 F.2d 801, 803 (2d Cir. 1992) (directing district courts to determine whether, and in what amount, a prevailing party should recover appellate attorney fees and costs).  Luca's attorneys are also entitled to compensation "for

---

[2] Wigdor received an hourly rate of $400 in *Morgenstern*; this opinion was issued after he submitted his affidavit.  *See* 2009 WL 5103158, at *16-*18.

time reasonably spent in preparing and defending" the fee application. *Weyant v. Okst*, 198 F.3d 311, 316 (2d Cir. 1999).

Brewington engaged Scott Korenbaum ("Korenbaum") as lead counsel to defend Luca's verdict, although Brewington contributed substantially; Brewington's appellate hours totaled 98.70, Korenbaum's 168.10. Korenbaum, in turn, engaged Jill Shellow ("Shellow") in an advisory capacity; she billed for 62.10 hours. In total, the supplemental application seeks $146,334.36 in attorney's fees and costs, consisting principally of the fees incurred by Brewington, Korenbaum and Shellow. The County challenges the hourly rates of Brewington ($400-$450), Korenbaum ($350) and Shellow ($350), and proposes a supplemental award of $97,683.42. County Mem. of Law at 11-12.

*1. Hourly Rates*

**a. Brewington**

Brewington seeks a rate of $400 per hour for all services rendered in connection with the County's appeal through November 15, 2009; he asks for $450 per hour for services rendered after that date because he has increased his standard hourly rate. *See* Letter from Brewington, Docket Entry No. 172 (Nov. 19, 2009). He has only incurred 21.50 hours since November 15. The differential between the two rates is $1,075.00, a relatively small sum compared to the total appellate fee application.

The Court adheres to the $400 hourly rate for all of the appellate services performed by Brewington. As for his pre-November 15th services, there is no reason why he should be compensated at a lower rate for appellate work than for trial work; the County does not contend otherwise. As for his post-November 15th services, there will undoubtedly come a time when higher fees would be warranted since the current hourly rate cannot logically be frozen in time, but the mere assertion by Brewington that he has raised his fees does not, standing alone, suffice.

7

**b. Korenbaum**

Having won a substantial verdict in the district court, a reasonable paying client would undoubtedly be willing to pay for the services of skilled appellate counsel to defend that verdict. Skilled appellate attorneys are rare and valuable resources, an observation often made by appellate judges:

> [T]he skills needed for effective appellate advocacy are not always found—indeed, perhaps, are rarely found—in good trial lawyers. Effective presentation to a federal court of appeals, or to any appellate court, requires a blend of talents not necessarily found in the typical trial lawyer. Appellate advocacy is, in short, a specialty all to itself . . . [but] it is astonishing how many cases are presented by lawyers who are simply not up to the task.

Judge Laurence H. Silberman, *Plain Talk on Appellate Advocacy*, 20 Litig. 3, 3 (Spring 1994).

> [A]ppellate judges labor under the immense disadvantage of having very little time to spend on each case . . . The judges are badly in need of the advocate's help, yet the working assumption of most of the lawyers who argue before appellate courts is that the judges have the same knowledge and outlook as the lawyers.

Judge Richard A. Posner, *How Judges Think* 219-20 (2008).

> Now a principle very few lawyers seem to grasp is that there are no perfect cases, or very few indeed. By the time a case gets up on appeal, there is usually some validity to each side's position, and there are some holes or flaws in even the best case. Nevertheless, this isn't soccer or hockey; there are no tie scores. In a competition between two imperfect cases, the winner winds up being the case that is second worst.

Judge Alex Kozinski, *The Wrong Stuff*, 45 Advoc. 10, 12 (Mar. 2002) (advising, with tongue planted firmly in cheek, "How to Lose an Appeal").

In engaging Korenbaum as lead appellate counsel, Brewington heeded these warnings. Korenbaum often serves as Brewington's appellate counsel, and has approximately 20 years experience as a lawyer. After two years as an associate with a private firm, he served from 1990 to 1995 with the New York City Law Department. He then returned to private practice,

spending some time as an associate with Brewington's firm.  He opened his own practice in 2000, specializing in civil rights litigation.  He has also served as a professor of legal writing at Benjamin N. Cardozo School of Law for several years.  Korenbaum Decl. ¶¶ 2-7, 11-12.

Korenbaum's offices are in the borough of Manhattan, within the Southern District, raising the question of whether the *Simmons* rule applies to the services of appellate counsel, especially since the appellate forum, the Court of Appeals for the Second Circuit, sits within the Southern District.  The Second Circuit has implicitly suggested that the district from which the appeal originated remains the relevant forum to determine the hourly rate for services rendered on appeal, *see, e.g.*, *Farbotko v. Clinton County*, 433 F.3d 204, 207-08 (2d Cir. 2005), but does not appear to have definitively settled the issue.  The Court need not do so here since the parties agree that Eastern District rates apply to all attorneys who defended Luca's verdict against the County's appeal.

Korenbaum seeks compensation at the rate of $350 per hour; his usual rate is $400 per hour.  He contends that his appellate services were those a partner would normally perform, and that $350 is within the range of Eastern District hourly rates for partners.  The County proposes that Korenbaum should receive $235 per hour, asserting that he functioned as a senior associate; the County further asserts, citing *Cruz*, that $235 is within the prevailing Eastern District range of rates for senior associates.  *See Cruz*, 2008 WL 905351, at *23.

Korenbaum did not perform the tasks of a senior associate; rather, he was the principal drafter of Luca's appellate brief, as well as Luca's memorandum in opposition to the County's motion for a stay of the judgment pending appeal.[3]  Korenbaum also argued the appeal.

---

[3] Korenbaum was initially victorious on this issue; the Court denied the County's motion in the first instance and on reconsideration, deferring the matter to the judgment of the Court of Appeals. *See* Mem. & Order, Docket Entry No. 158 (Sep. 12, 2008); Mem. & Order, Docket Entry No. 161 (Oct. 23, 2008). The Second Circuit granted the County's request for a stay of the judgment. *See* Order,

9

*See* Korenbaum Decl. ¶ 21.  As lead appellate counsel, he had a level of responsibility that would normally be entrusted to a partner, and he deserves to be compensated as such.

Korenbaum's appellate experience is extensive, but he submits only two fee awards. *See Reddy v. Salvation Army*, No. 06-CV-5176, Docket Entry No. 65 (S.D.N.Y. Oct. 3, 2008) (submitted as Ex. A to Korenbaum Decl.); Stipulation & Order of Settlement, *Zellner v. Summerlin*, No. 02-CV-95, Docket Entry No. 99 (E.D.N.Y. Nov. 26, 2007).  Korenbaum's adversary stipulated to his hourly rate in both of these matters ($400 in *Reddy*, $350 in *Zellner*); this renders these awards of lesser weight than those in which a district court selects an appropriate rate.  Further, since *Reddy* was a Southern District case, the Court will not consider it.

In *Zellner*, after the district court vacated a jury verdict in favor of the plaintiff, Korenbaum prevailed upon the Second Circuit to reverse the district court and reinstate the jury's verdict.  *See Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) (reversing district court's judgment). The scope of this victory attests to Korenbaum's appellate skills and supports the proposition that a reasonable paying client would seek him out and pay him a substantial fee to defend a favorable verdict on appeal.

In this case, Korenbaum achieved a total victory over his adversary on all the substantive issues raised by the County's appeal.  The only issue resolved in the County's favor—the fee remand—derived from the intervening opinion in *Simmons*.  The issuance of a Summary Order by the appellate court succinctly disposing of all the County's substantive claims is testament to Korenbaum's appellate skills.

The Court therefore finds that a reasonable, paying client would be willing to pay Korenbaum's requested rate of $350 per hour for his appellate services.  Once again, Korenbaum

_____

*Luca v. County of Nassau*, No. 08-CV-3384 (2d Cir. Nov. 6, 2008) (Raggi, J.).

functioned as a partner, not a senior associate; the hourly rate of $350 is solidly within the current range of rates for partners in the Eastern District. *See Gutman*, 2009 WL 3296072, at *2 (noting that hourly rates of between $300 and $400 for partners are "within the Eastern District range").

**c. Shellow**

Shellow has approximately 20 years of litigation experience in both private and public practice; her work experience includes five years of service with the Department of Justice. She is now a solo practitioner with offices in Connecticut and Manhattan. When she serves as lead counsel, she charges clients $450 per hour; when she serves in an advisory capacity to other attorneys, she charges $350 per hour. She advises that she has often worked with Korenbaum in that capacity, which she describes as an "of-counsel" role. *See* Shellow Decl. ¶¶ 2-8.

Like Korenbaum, Shellow seeks compensation at $350 per hour, contending that she provided the services a partner would provide. The County contends, as it did with Korenbaum, that Shellow functioned as a senior associate, and that $235 is the appropriate rate for her services.

Having reviewed Shellow's affidavits and billing records, it is clear that Shellow functioned in an advisory capacity to Korenbaum, and had substantially less responsibility. Korenbaum, not Brewington, asked Shellow to participate on the appeal. Shellow drafted a portion of the appellate brief and offered edits to the whole, but the completed product was Korenbaum's responsibility. She advised Korenbaum on strategy for the oral argument and attended the argument, but only Korenbaum argued the appeal. In sum, her role was in an of-counsel capacity—as she herself described it. *See* Shellow Decl. ¶ 7.

As noted, a reasonable paying client would want skilled appellate counsel to defend a favorable verdict on appeal. Such a client would reasonably be willing to pay for a second skilled lawyer for assistance. Whether that same client would be willing to pay the same amount for both

11

is problematical; accordingly, the Court will reduce Shellow's requested hourly rate in light of her subsidiary role.

The County's proposal, $235 per hour, is indeed within the prevailing range of hourly rates for senior associates. *See Cho v. Koam Med. Servs.*, 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (noting that Eastern District rates for senior associates range between $200 and $250 per hour); *see also Moran v. Sasso*, No. 05-CV-4716, 2009 WL 1940785, at *4 (E.D.N.Y. July 2, 2009) (same, citing *Cho*); *Access 4 All, Inc. v. 135 West Sunrise Realty Corp.*, No. 06-CV-5487, 2008 WL 4453221, at *6 (E.D.N.Y. Sep. 30, 2008) (same, citing *Cho*). Shellow was not engaged as a senior associate, however. Her 20 years of experience belies that status. She has an independent practice, and was engaged to provide advice to Korenbaum as a peer, not as a subordinate. This is the nature of an of-counsel role and Shellow deserves an of-counsel rate.

The Court finds that a rate of $275 per hour is appropriate in these circumstances. This is between the prevailing Eastern District ranges for partners ($300-$400) and senior associates ($200-$250). While Shellow may command a higher figure in a different set of circumstances, $275 per hour is commensurate with the of-counsel appellate role she played in this case.

## 2. *Hours Claimed*

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed. *See N.Y. State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). A district court should exclude hours that were not "reasonably expended," including those that were "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434-35 (1983). Billing records in support of a fee application need not record "how each minute of time was expended," but must permit meaningful review. *Id.* at 437 n.12.

The County does not challenge any of the hours claimed by any of the attorneys who handled Luca's appeal; nonetheless, the Court has "discretion in determining the amount of a fee

award," *id.* at 437, and must use that discretion to make "its own assessment of what is appropriate[.]" *N.Y. State Ass'n*, 711 F.2d at 1146.  The Court has therefore reviewed the hours claimed and finds them reasonable, except as follows.

Brewington claims one half-hour on November 3, 2009; he drafted a letter asking the Court to exclude several time entries from the fee calculation that had been erroneously included. *See* Letter from Brewington, Docket Entry No. 168 (Nov. 4, 2009); Brewington Reply Decl., Ex. B at 1 (billing .50 hours to "Draft letter to Court about error"); Supplemental Application, Ex. H at 1 (time entries for Brewington and staff for February 25-26, 2008).  No client would pay for fees incurred correcting errors made by an attorney.  Accordingly, the Court reduces Brewington's claimed hours in the supplemental application by one half-hour, and eliminates a handful of other hours as requested.[4]

The Court also finds that too many hours were devoted to preparing a reply to the County's memorandum in opposition to Luca's supplemental application.  *See* Reply Mem. of Law, Docket Entry No. 174 (Nov. 25, 2009).  Brewington, Korenbaum, and Shellow claim nearly 50 hours of work amongst them in preparing this filing—totaling nearly $17,000.  By the time these attorneys were preparing the reply, however, they should have recognized that the difference between the hourly rates they claimed and the hourly rates proposed by the County amounted to a disagreement over approximately $50,000.  The Court finds $17,000 in litigation expenses over $50,000 worth of fees to be excessive.  In the exercise of its discretion, the Court reduces the number of hours claimed by Brewington, Korenbaum, and Shellow in preparing the reply by fifty percent.

---

[4] The excluded hours amount to 6.80 hours of work by Brewington and 14.30 hours of work by Mili Makhijiani, Brewington's associate; the total dollar amount excluded is $4,865.00. *See* Letter from Brewington, Docket Entry No. 168 (Nov. 4, 2009).

13

### 3. Luca's Other Claimed Fees

Luca also claims attorney's fees for Brewington's associates Valerie Cartright and Mili Makhijani; Brewington's law clerk Precilla Lockett; and Korenbaum's legal assistant Sarah Farjardo. The County has no objections. The Court finds that the hours and hourly rates submitted for Cartwright, Makhijani, Lockett, and Farjardo are reasonable.

### 4. Total Fee Award for Appellate Work

Based on the rulings set out above, the Court awards supplemental attorney's fees in the sum of $125,915.00, as reflected in the following table:

|  | Rate | Appeal & Fee Application | Fee Application Reply | Adjustments | Total |
|---|---|---|---|---|---|
| **Brewington** | $400 | 98.70 | (21.5/2) = 10.75 | - 7.3 | $40,860.00 |
| **Korenbaum** | $350 | 168.10 | (18.7/2) = 9.35 | - | $62,107.50 |
| **Shellow** | $275 | 62.10 | (8.4/2) = 4.2 | - | $18,232.50 |
| **Cartwright** | $250 | 0.80 | - | - | $200.00 |
| **Makhijani** | $150 | 17.90 | - | - 14.30 | $540.00 |
| **Lockett** | $100 | 8.70 | - | - | $870.00 |
| **Farjardo** | $75 | 41.40 | - | - | $3105.00 |
|  |  |  |  | **TOTAL** | **$125,915.00** |

### 5. Costs

Luca also claims costs incurred on appeal for copying, travel, postage, and expert witness fees; the County has no objections. The Court has reviewed the records and finds that the claimed costs are reasonable, with the exception of the witness fee: Dr. Alan Leiken testified for Luca as an expert witness at trial on February 25, 2008, at a cost of $3,600.00. *See* Supplemental

14

Application, Ex. H. Luca has already recouped this expense in the initial award of costs; it must be excluded from the supplemental award.[5]

There is also one *de minimis* exception: postage of $0.44 for the aforementioned letter advising the Court of the error in the supplemental application. This amount is excluded because, as noted, the cost of correcting an attorney's errors, no matter how trivial, should be borne by the attorney, not the defendant.

The Court therefore awards a total of $1,145.45 in costs, representing $1,088.92 spent by Brewington, $52.53 spent by Korenbaum, and $4.00 spent by Shellow during the course of the County's appeal and the preparation of the supplemental fee application.

---

[5] The Court observes that this cost should have been identified by Brewington in his letter of November 4, 2009, in which he identified other duplicate billing claims. Leiken's fee for his trial testimony is the largest single item among the claimed costs in the supplemental application, and Dr. Leiken's fees have already been the subject of litigation between the parties. *See* Mem. & Order, Docket Entry No. 151 (ordering the County to compensate Dr. Leiken for his appearance at a deposition). The inclusion of this fee request in the present application was apparently inadvertent.

**III**

The fee award previously issued is reinstated.  *See* Docket Entry No. 149.  In addition, the defendant is ordered to pay the plaintiff an additional $125,915.00 for attorney's fees incurred in respect to the defendant's appeal, $1,145.45 for the costs of appeal, and post-judgment interest on these amounts in accordance with 28 U.S.C. § 1961(a).[6]

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
January 25, 2010

---

[6] The County, of course, had the absolute right to pursue an appeal. The stark reality, however, is that the Court of Appeals, by Summary Order, made short shrift of the County's appeal and the County has now incurred an additional $127,060.45 in attorney's fees for the plaintiff. When added to the judgment appealed from, the total monetary judgment which the County must now pay the plaintiff for the privilege of keeping a highly qualified woman from becoming a Nassau County police officer (with interest running until the judgment is paid) is $1,077,034.20.